UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY RUGGIERO,

                               Plaintiff,

            -against-

STEPHANIE E. JONES, Correction Officer,
Fishkill C.F., *et al.*,

                               Defendants.

**OPINION & ORDER**

23-CV-07157 (PMH)

PHILIP M. HALPERN, United States District Judge:

Anthony Ruggiero ("Plaintiff"), who is proceeding *pro se* and in *forma pauperis*, commenced this action on August 11, 2023. (Doc. 1).[1] On March 8, 2024, Plaintiff filed, with the Court's permission, an amended complaint. (Doc. 64, "Am. Compl."). Plaintiff, in his Amended Complaint, asserts five claims under 42 U.S.C. § 1983 (Claims Numbered 1-4, and 6) predicated upon violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as a State law claim (Claim 5). (*Id.*). He asserts that during his confinement at Fishkill Correctional Facility ("Fishkill"), the following New York State employees violated his rights: Stefanie Jones, Paul Julien, Kevin Eschmann, Alexandra Gibbons, Chris Churns, Ana Figueroa, Edward Burnett, Jerome Holloway, David Valentino, David Juskim (referred herein as Nicholas Juskin),[2] and a Jane Doe that Plaintiff refers to as "Ms. A" (the "State Defendants"). Plaintiff also

---

[1] Plaintiff, in his original complaint, had included John P. Broas, Shawn T. Sawyer, Veronica Vasquez Anthony J. Annucci, and Kaylah V. Pryear as defendants, but Plaintiff later voluntarily dismissed his claims against them pursuant to Federal Rule of Civil Procedure 41. (Docs. 54, 55, 57).

[2] After Plaintiff filed his Amended Complaint, the New York Attorney General's Office clarified in a letter to the Court that there is no New York State Police Officer by the name of "David Juskim." (Doc. 82). The letter continued, however, that "Investigator Nicholas Juskin" is employed by the New York State Police. (*Id.*). Plaintiff has since advised the Court that he "intends to sue Investigator Nicholas Juskin" (Doc. 90), who has received service of process. To the extent Plaintiff seeks an amendment, *nunc pro tunc*, to the Amended Complaint to replace "David Juskim" with Nicholas Juskin as a Defendant, that application is granted.

brings a State law claim against other Fishkill inmates: Dario Torres, Timothy McKenny, Zaire Birks, Eric Johnson, German Castillo, and two John Doe inmates (the "Inmate Defendants" and together with the State Defendants, "Defendants").[3]

The State Defendants filed a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on April 17, 2024. (Doc. 71; Doc. 72, "Def. Br.").[4] Plaintiff filed his memorandum of law in opposition on May 15, 2024[5] (Doc. 75, "Pl. Br."),[6] and State Defendants' motion to dismiss was fully briefed with the filing of their reply memorandum of law on October 26, 2023. (Doc. 77). With respect to the Inmate Defendants, none of them are represented by counsel. Although Defendant Torres filed an answer to the original complaint (Doc. 24), none of the Inmate Defendants have answered or moved with respect to the Amended Complaint.[7] To that end, none of the Inmates Defendants have joined this motion.

---

[3] Plaintiff, in his original complaint, named as a defendant Scott Durant, an incarcerated individual. (Doc. 1). Plaintiff does not name Mr. Durant as a defendant in the Amended Complaint. (*See generally* Am. Compl.). However, the docket sheet still shows Mr. Durant as a defendant in this action. The Clerk of Court will be directed to terminate Mr. Durant as a defendant herein.

[4] Although the State Defendants' Notice of Motion omits Juskin as a moving Defendant, the Court has subsequently granted the State Defendants' request to "join him" in the "fully briefed Motion to Dismiss." (Docs. 95, 96). The State Defendants also argue on behalf of Ms. A in their memorandum of law, despite Ms. A, as a Jane Doe, not being served with process. (*See, e.g.*, Def. Br. at 11 n.1). The Court therefore construes the State Defendants' motion as being made on behalf of all the State Defendants.

[5] The docket sheet reflects two opposition briefs by Plaintiff on May 15, 2024, and May 17, 2024. (Docs. 75, 76). But the May 15 and 17 submissions are of the same brief. As such, citations herein reference only Plaintiff's first-filed opposition.

[6] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a *pro se* plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings . . . .'" (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005))). Accordingly, the Court considers on this motion the additional allegations relevant to this motion in Plaintiff's opposition.

[7] The docket reflects that none of the Inmate Defendants have been served with the Amended Complaint. Accordingly, as explained *infra*, Plaintiff is directed, within 60-days of this Order, to serve each of the Inmate Defendants with the Amended Complaint, and file to the ECF docket proof of service thereof.

For the reasons set forth below, the State Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff was an inmate at Fishkill in 2022. (Am. Compl. ¶ 26). Plaintiff alleges that, during this period, Fishkill "[s]security staff" and gang members "work[ed] in tandem" to "oppress[] [] everyone." (*Id.* ¶ 32). On June 13, 2022, Plaintiff received a misbehavior report written by Defendant Jones. (*Id.* ¶ 27). Plaintiff, that same month, was found "not guilty" during a disciplinary hearing arising out of Defendant Jones' report. (*Id.* ¶ 28). Plaintiff alleges that he suffered various forms of retaliation as a result of the disposition at the disciplinary hearing, including Defendant Gibbons "squeez[ing] [his] genitals" during a "pat-fisk" [*sic*] on August 10, 2022 (*Id.* ¶¶ 30-31, 34-36).

Two days later, Plaintiff informed Defendants Eschmann and Julien of his intent to file a complaint against Defendant Gibbons under the Prison Rape Elimination Act. (*Id.* ¶¶ 37-38). Around ten minutes after this encounter, Defendant Torres and two incarnated John Doe Defendants "jumped and assaulted" Plaintiff in the bathroom, "cut[ting]" his ear and "hit[ting] [him] with their fists." (*Id.* ¶ 41). As a result of injuries sustained during this alleged physical assault, Defendants Eschmann and Julien took Plaintiff to the facility hospital. (*Id.* ¶¶ 45-47). Plaintiff, after arriving at the facility hospital, "requested hoiusing [*sic*] in protective custody"; Defendant Eschmann responded that "[t]here is No Protective Custody Unit at Fishkill." (*Id.* ¶¶ 48-49). Plaintiff alleges that Defendant Burnett and Churns "dismantl[ed]" the Protective Custody Unit. (*Id.* ¶¶ 78, 99).

After Plaintiff returned from the facility hospital, he was placed in "B-West dorm," which correction officers and inmates allegedly call "gangland." (*Id.* ¶¶ 55-56, 61). Defendant Figueroa, as Plaintiff arrived at in B-West dorm, "loudly announce[d]" that "this whiteboy doesn't like

n*****s and sp**s." (*Id.* ¶ 57). A few weeks later, Plaintiff was again physically assaulted by other inmates, who also took Plaintiff's "commissary bag." (*Id.* ¶ 65). Plaintiff then rushed to Defendants Valentino and Holloway seeking protection and informing them that he had been "assaulted and robbed" by a "mob" in his "cube." (*Id.* ¶¶ 66-67, 105). As alleged, Defendants Valentino and Holloway "did nothing" and told Plaintiff to return to his "cube." (*Id.* ¶ 68). Plaintiff, upon returning, was physically assaulted by Defendants Castillo, McKenney, Johnson, and Birks. (*Id.* ¶ 69). Plaintiff alleges that Defendants Eschmann and Juskin, a State Trooper (*id.* ¶ 85), refused to properly investigate, or "initiate the process to criminally charge," the Inmate Defendants (*id.* ¶ 108).

## <u>STANDARD OF REVIEW</u>

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[8] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[8] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the

most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff presses five claims under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)).

I. Plaintiff's First Claim for Relief: First Amendment Retaliation

Plaintiff's first claim for relief is for retaliation against Defendants Jones, Julien, Gibbons, Figueroa, Eschmann, and Ms. A in violation of the First Amendment. (Am. Compl. at 14).[9]

A plaintiff asserting a First Amendment retaliation claim must establish that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). A plaintiff

---

[9] Citations to specific pages of the Complaint and other filings on the docket correspond to the pagination generated by ECF.

must allege, with respect to the third element, that the retaliatory motive was a "but for" cause of the adverse action. *See Barkai v. Mendez*, 629 F. Supp. 3d 166, 198 (S.D.N.Y. 2022). In other words, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

With respect to Defendants Gibbons and Jones, the State Defendants argue that Plaintiff failed to allege that he engaged in protected speech or conduct. (Def. Br. at 19-20). To meet this element, Plaintiff alleges he was retaliated against for being found "not guilty of all charges" related to a disciplinary report by Defendant Jones. (Am. Compl. ¶¶ 26-34, 94; Pl. Br. at 3, 5).  But "[b]eing found not guilty does not qualify as protected activity, or for that matter, activity at all." *Davis v. Jackson*, No. 15-CV-05359, 2018 WL 358089, at *11 (S.D.N.Y. Jan. 8, 2018) (collecting cases).[10] Nor does Plaintiff allege that he filed a grievance or engaged in any other protected activity before Defendants Gibbons and Jones allegedly retaliated against him. Plaintiff therefore fails to allege the first element of his retaliation claim against them.

With respect to Defendants Eschmann, Julien, and Ms. A, Plaintiff alleges that that they orchestrated an attack by the Inmate Defendants against him as a result of his threat to file a grievance against Defendant Gibbons. (Am. Compl. ¶¶ 34-45). The State Defendants argue that Plaintiff failed to satisfy the causal-connection element against these Defendants. (Def. Br. at 23-

---

[10] Plaintiff, in his opposition brief, adds an allegation that Defendant Jones retaliated against him for "refusing her direct order[s]." (Pl. Br. at 5). But refusing a correctional officer's orders is also not protected activity under the First Amendment. *See Rodriguez v. Phillips*, 66 F.3d 470, 478 (2d Cir. 1995) ("[T]he First Amendment is subject to severe curtailment when its protections are inconsistent with the limitations inherent in incarceration, especially those limitations necessary for the safety and security of the prison environment."); *Coleman v. Cuomo*, No. 18-CV-00390, 2019 WL 6829613, at *10 (N.D.N.Y. Dec. 13, 2019) ("[S]everal courts [within the Second Circuit] have made clear that a verbal confrontation with a correction officer based on an inmate's dissatisfaction with that officer's directive is one example of speech that is not constitutionally-protected activity" (collecting cases)), *adopted sub nom. Coleman v. Racette*, No. 18-CV-00390, 2020 WL 896785 (N.D.N.Y. Feb. 24, 2020).

24). The Court agrees. Plaintiff pleads no allegations tying Defendants Eschmann, Julien, or Ms. A to the later assault. He instead only alleges that he had informed Defendants Eschmann and Julien of his intent to file a grievance before the assault (Am. Compl. ¶¶ 37-38, 41), that they "became argumentative" with him (Pl. Br. at 9), and that they spoke with Ms. A right before the assault (Am. Compl. ¶¶ 39, 41). These allegations provide no grounds for the Court to infer, even interpreting the *pro se* complaint with the required liberality, that Defendants Eschmann, Julien, and Ms. A conspired with and directed the Inmate Defendants to attack Plaintiff. To that end, it is well-established that "[c]onclusory allegations will not suffice [for a retaliation claim]; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012); *see, e.g.*, *Crichlow v. Doccs*, No. 18-CV-03222, 2022 WL 6167135, at *8 (S.D.N.Y. Oct. 7, 2022) (dismissing a plaintiff's retaliation claim and explaining "[s]imply stating, in conclusory fashion, that" the defendants retaliated against him "d[id] not establish causation"); *Zielinski v. Annucci*, No. 17-CV-01042, 2019 WL 2870337, at *10 (N.D.N.Y. Mar. 19, 2019) (denying the plaintiff's motion to amend his First Amendment claim and finding the plaintiff's allegations that prison guards "orchestrated" an attack by inmates as "vague, speculative, and conclusory"), *adopted by*, 2019 WL 2869608 (N.D.N.Y. July 3, 2019). The claim as to Defendants Eschmann, Julien, and Ms. A fails and is dismissed.

Finally, as to Defendant Figueroa, the State Defendants argue that Plaintiff fails to allege an adverse action. (Def. Br. at 20-21). Defendant Figueroa's only alleged adverse action was screaming at Plaintiff that "this whiteboy doesn't like n*****s and s***s." (Am. Compl. ¶ 57). As a general matter, "verbal threats may constitute an adverse action." *Mateo v. Bristow*, No. 12-CV-05052, 2013 WL 3863865, at *5 (S.D.N.Y. July 16, 2013). Such verbal threats, however, must be

"specific and direct" to allow the court to infer that they would deter an inmate from exercising his First Amendment rights. *Id.*; *accord Fabricio v. Griffin*, No. 16-CV-08731, 2019 WL 1059999, at *8 (S.D.N.Y. Mar. 6, 2019). Here, Plaintiff fails to allege that Defendant Figueroa made a "specific and direct" threat. Indeed, it is unclear from the Amended Complaint whether Defendant Figueroa's statement was even a threat. The alleged statement, at most, amounts to a "vague intimation[ ] of some unspecified harm" that "[does] not rise to the level of adverse action." *Amaker v. Annucci*, No. 14-CV-09692, 2016 WL 5720798, at *5 n.8 (S.D.N.Y. Sept. 30, 2016) (quoting *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007)); *aff'd*, 721 F. App'x 82 (2d Cir. 2018); *see also Ross v. Westchester Cnty. Jail*, No. 10-CV-03937, 2012 WL 86467, at *7 (S.D.N.Y. Jan. 11, 2012) (explaining that "harassing comments . . . do not constitute adverse actions sufficient to state a retaliation claim").

Accordingly, Plaintiff's first claim for relief is dismissed.[11]

II.  <u>Plaintiff's Second Claim for Relief: 1983 Conspiracy</u>

Plaintiff's second claim for relief is for Section 1983 conspiracy against Defendants Eschmann, Julien, and Ms. A in violation of the Eighth Amendment. (Am. Compl. at 14-15). Plaintiff alleges that these Defendants "conspired together to have [him] beaten up." (*Id.* ¶ 96). According to the Amended Complaint, Defendants Torres and John Doe "jumped and assaulted" Plaintiff shortly after he spoke with Defendants Eschmann and Julien and saw Ms. A. (*Id.* ¶¶ 37-39, 41). Defendants argue that these allegations fail to state an underlying constitutional violation, and thus Plaintiff's conspiracy claim fails. (Def, Br. at 30-32).

---

[11] Given the Court's ruling herein, the Court need not and does not address the other arguments made by the State Defendants in support of their motion to dismiss the First Amendment claim.

"To establish a claim for a [Section] 1983 conspiracy, Plaintiffs must demonstrate: '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Singer v. City of New York*, 417 F. Supp. 3d 297, 327 (S.D.N.Y. 2019) (quoting *Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 381 (S.D.N.Y. 2012) (quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002))). Moreover, a conspiracy claim under § 1983 requires a plaintiff to state an underlying violation of constitutional rights. *See Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) ("Because [plaintiff] was unable to establish an underlying violation of his constitutional rights . . . his conspiracy . . . necessarily fail[s] as well." (citing *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009))).

Liberally construed, the underlying violation of Plaintiff's constitutional rights alleged is a failure to protect by Defendants Eschmann, Julien, and Ms. A in violation of the Eighth Amendment. *See Avincola v. Maldonado*, No. 04-3529, 2005 WL 3116760, at *1 (2d Cir. Nov. 22, 2005) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment' and will give rise to a failure-to-protect claim."). The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of inmates in their custody." *Rennalls v. Alfredo*, No. 12-CV-05300, 2015 WL 5730332, at *3 (S.D.N.Y. Sept. 30, 2015) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)); *see also Rembert v. Cheverko*, No. 12-CV-09196, 2014 WL 3384629, at *5 (S.D.N.Y. July 10, 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)); *Randle v. Alexander*, 960 F. Supp. 2d 457, 471 (S.D.N.Y. 2013). However, while prison officials have a duty to protect prisoners, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Fair v. Weiburg*,

No. 02-CV-09218, 2006 WL 2801999, at *4 (S.D.N.Y. Sept. 28, 2006) (quoting *Farmer*, 511 U.S. at 834).

To state a failure to protect claim, a plaintiff must plead facts sufficient to establish both an objective and subjective prong. *See Camacho v. DuBois*, No. 21-CV-06180, 2022 WL 17807433, at *5 (S.D.N.Y. Dec. 19, 2022). The objective prong in a failure to protect case requires that "[a] plaintiff show a substantial risk of harm from either a specific assailant or a more general risk of harm due to the conditions at the time of the attack, such as where a substantial risk of inmate attacks was longstanding, pervasive, [or] well-documented." *Dietrich v. Cnty. of Orange*, No. 19-CV-10485, 2020 WL 5209816, at *3 (S.D.N.Y. Sept. 1, 2020) (alterations in original, internal citations and quotation marks omitted). As for the subjective prong, "a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Rennalls*, 2015 WL 5730332, at *3; *see also Bacon v. Evans*, No. 20-CV-06337, 2021 WL 5643038, at *4 (S.D.N.Y. Dec. 1, 2021) (explaining that a plaintiff must sufficiently allege that "the defendant acted with deliberate indifference" to state a failure to protect claim).

The State Defendants argue that Plaintiff's allegations fail to satisfy the subjective element. (Def. Br. at 31). The Court agrees. Plaintiff fails to plead any allegations establishing that Defendants Eschmann, Julien, and Ms. A possessed the requisite knowledge that Plaintiff faced a substantial risk. He does not, for instance, allege that these Defendants were aware that Defendants Torres and John Doe had made specific threats to Plaintiff. *Cf. Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) (holding that a plaintiff stated a failure-to-protect claim where the defendant officer knew that another inmate had made death threats against the plaintiff). Nor does Plaintiff allege that he had requested to be transferred to a different cell block because of these other

11

inmates. *Cf. Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *9 (S.D.N.Y. June 23, 2010) (finding that a "trier of fact could conclude that the prison officials failed to take reasonable measures to abate the harm" faced by the plaintiff where he had "requested a transfer from his [rival gang's] cell block"). Thus, there is no basis on which to infer that these Defendants were aware of a threat of harm to Plaintiff. Moreover, as explained *supra*, Plaintiff's theory that certain of the State Defendants orchestrated the attack by Defendant Torres and two incarnated John Doe Defendants (Am. Compl. ¶¶ 96-97) is mere speculation unsupported by allegations in the Amended Complaint.

Separately, Plaintiff's allegations amount to a surprise attack. Although the Court sympathizes with Plaintiff's situation, "unexpected incidents are insufficient to propagate a deliberate indifference claim." *Gilmore v. Rivera*, No. 13-CV-06955, 2014 WL 1998227, at *4 (S.D.N.Y. May 14, 2014); *see also Rivera v. Royce*, No. 19-CV-10425, 2021 WL 2413396, at *8 (S.D.N.Y. June 11, 2021) ("It is well-established that prison officials cannot be deliberately indifferent to a surprise attack."). Plaintiff thus has not adequately alleged an underlying constitutional violation for his conspiracy claim. As such, Plaintiff fails to state his Section 1983 conspiracy claim. *See, e.g.*, *Anderson v. City of New York*, No. 16-CV-06629, 2017 WL 2729092, at *5 (S.D.N.Y. June 23, 2017) ("[The plaintiff] fails to state a § 1983 conspiracy claim because he has failed to allege a violation of his rights.").

Accordingly, Plaintiff's second claim for relief is dismissed.

III. <u>Plaintiff's Third Claim for Relief: Deliberate Indifference</u>

Plaintiff's third claim for relief is for deliberate indifference against Defendants Burnett and Churns in violation of the Eighth Amendment. (Am. Compl. at 15). Plaintiff alleges that they—as Superintendent and Deputy Superintendent of Fishkill—displayed "deliberate indifference to Plaintiff's health and safety by dismantling and not maintaining a Protective

Custody Unit." (*Id.* ¶¶ 98-99). The State Defendants argue that Plaintiff fails to "demonstrate any personal involvement" by Defendants Burnett and Churns, and, in the alternative, that Plaintiff fails to meet the subjective prong of his deliberate indifference claim. (Def. Br. at 25). Plaintiff, in response, states that he has "no counter argument." (Pl. Br. at 18).

"To state a claim under Section 1983, a plaintiff must allege facts showing defendants' direct and personal involvement in an alleged constitutional deprivation." *Johnson v. City of Newburgh*, 690 F. Supp. 3d 224, 238 (S.D.N.Y. 2023). The Second Circuit, in *Tangreti v. Bachmann*, explained that "there is no special rule for supervisory liability." 983 F.3d 609, 618 (2d Cir. 2020). The Second Circuit continued: "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* In other words, for a deliberate indifference claim, a plaintiff must show that a supervisor defendant "herself acted with deliberate indifference—meaning that [the defendant] personally knew of and disregarded an excessive risk to [the plaintiff's] health or safety." *Id.* at 619 (cleaned up).

Since *Tangreti*, some district courts in this Circuit "have determined that personal involvement still may be established for a supervisory defendant if he or she created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 416 (E.D.N.Y. 2023) (collecting cases). These courts, however, have required a plaintiff to plead "the necessary *mens rea* of deliberate indifference" "permit[ing] the inference that [the defendant] had subjective knowledge of the risk." *E.g.*, *Stone #1 v. Annucci*, No. 20-CV-01326, 2021 WL 4463033, at *9 (S.D.N.Y. Sept. 28, 2021). Moreover, these courts have stressed that the "requisite inference of *mens rea* cannot be established merely by showing that a supervisory defendant '*should have known* of the

substantial risk of [] abuse'"; a plaintiff must plead that the "defendant-official [] subjectively kn[ew] of the risk" and "consciously disregard that risk." *Id.* at \*11 (quoting in *Tangreti*, 983 F.3d at 618; emphasis in *Tangreti*).

Here, the Court need not wade into the viability of a post-*Tangreti* deliberate indifference claim against a prison "policymaker." Even if such a claim is cognizable, Plaintiff's allegations do not allow the Court to infer that Defendants Burnett or Churns acted with the requisite state of mind. Indeed, in his Amended Complaint, Plaintiff only makes allegations about his own experience.[12] He does not make any allegation that either Defendants Burnett or Churns were aware of his specific circumstances. Instead, Plaintiff's sole allegation about the dangers he and other Fishkill inmates faced was that "B-West dorm" is referred to as "gangland" by staff and inmates. (Am. Compl. ¶ 61). Allegations that Plaintiff was incarcerated with dangerous individuals, alone, are not enough to state a deliberate indifference claim. *See Thomas v. Demeo*, No. 15-CV-09559, 2017 WL 3726759, at \*8 (S.D.N.Y. Aug. 28, 2017) ("Given that inmates in federal prison are often incarcerated specifically because of some record of violence, it can hardly

---

[12] Plaintiff, in his opposition brief, adds an allegation that "[i]nmates getting assaulted by other inmates because the correctional staff told them to do it" is an "everyday occurrence." (Pl. Br. at 15). But this allegation is also insufficient to establish that Defendants Burnett or Churns acted with the requisite state of mind. At most, this allegation shows that Defendants Burnett or Churns should have known about the risks faced by Fishkill inmates. That is not enough. By way of contrast, courts within this Circuit post-*Tangreti* have required a plaintiff to plead far more substantial allegations to establish that the prison officials *knew* of a substantial risk. *See, e.g.*, *Stone #1*, 2021 WL 4463033, at \*10 (plaintiff satisfied the subjective prong by pleading "(1) statistical reports on prison rape, including DOCCS reports of which [the defendant prison officials] were likely aware . . . ; (2) the steps taken by several states and local correctional institutions to require the presence of female staff to guard women prisoners, and to remove men from guarding women prisoners in housing areas . . . ; (3) the fact that [the defendant prison officials] are named defendants in multiple suits in which imprisoned women have brought claims of being sexually abused by staff in DOCCS facilities . . . ; and (4) the fact that staff sexual misconduct at DOCCS facilities has resulted in numerous prosecutions and convictions of correction officers"); *Myers on behalf of Est. of Myers v. Davenport*, No. 1:21-CV-00922, 2022 WL 3017367, at \*7 (N.D.N.Y. July 29, 2022) (same where the "Department of Justice had previously issued a 'scathing' report on the facility regarding the dangers the residents there faced").

be said that Plaintiff's comments to [the defendant officer] warranted a need for further protection, especially in the absence of any history of violence between [the other inmate] and Plaintiff."); *see also Miller-Santiago v. Warden*, No. 23-CV-00393, 2023 WL 4564485, at *2 (D. Conn. July 17, 2023) (dismissing a deliberate indifference claim against the prison Warden and Commissioner because the plaintiff failed to allege "facts showing that" these defendants "had subjective knowledge of [a] substantial risk he faced and disregarded that risk"); *Elting v. Lassiter*, No. 22-CV-08573, 2023 WL 8699454, at *7 (S.D.N.Y. Dec. 14, 2023) (similar).

Accordingly, Plaintiff's third claim for relief is dismissed.

IV. <u>Plaintiff's Fourth Claim for Relief: Failure to Protect</u>

Liberally construed, Plaintiff's fourth claim for relief is for failure to protect against Defendants Valentino and Holloway in violation of the Eighth Amendment. (Am. Compl. at 16; *see also id.* ¶ 105 (alleging that Defendants Valentino and Holloway did not provide Plaintiff with "requested protection" and did not "protect[]" him from other Fishkill inmates). As discussed *supra*, Plaintiff must plead facts sufficient to establish both the objective and subjective prongs to make out his claim.

The State Defendants argue that Plaintiff has again merely alleged a "surprise attack" without satisfying the subjective prong. (Def. Br. at 26-28). The Court disagrees. Plaintiff alleges that he sought Defendants Valentino and Holloway's "protection" "immediately" after being "hit and robbed." (*Id.* ¶ 105; *see also id.* ¶¶ 64-69). Plaintiff alleges that Defendants Valentino and Holloway then sent him right back to that area—where he was again physically assaulted. (*Id.*). The second assault was thus not a "surprise"; Plaintiff had put Defendants Valentino and Holloway on notice that he faced a specific threat of assault by his fellow inmates in a specific area of the prison and was then assaulted. *See Davis v. Torres*, No. 10-CV-02236, 2012 WL 3070092, at *5 (S.D.N.Y. May 2, 2012) ("Courts have found that a prisoner validly states an Eighth Amendment

15

claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted." (collecting cases)), *adopted sub nom. Davis v. New York State Dep't of Corr.*, No. 10-CV-02236, 2012 WL 3070083 (S.D.N.Y. July 27, 2012). Contrary to the State Defendants' suggestion, Plaintiff does not have to allege that he had "identified his assailants" at the time to state a claim. (Def. Br. at 26). It is enough for Plaintiff to allege that "prison officials were sufficiently aware that he was at risk of substantial harm." *Stewart v. Fisher*, No. 11-CV-02184, 2011 WL 6153084, at *6 (S.D.N.Y. Dec. 12, 2011) (rejecting the defendants' argument on a motion to dismiss that the plaintiff failed to state a failure-to-protect claim because he "did not identify" his assailant to prison staff).

Accordingly, Plaintiff has sufficiently alleged his claim for failure to protect against Defendants Valentino and Holloway.

V.   Plaintiff's Sixth Claim for Relief: Failure to Prosecute

Plaintiff's sixth claim for relief is for failure to prosecute against Defendants Eschmann and Juskin. (Am. Compl. at 17). The State Defendants argue that a claim for a failure to prosecute is not "cognizable" under Section 1983. (Def. Br. at 28). "[T]here is no constitutional right to the criminal prosecution of a third party." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). It is thus also well-established that "there is no constitutional right to an adequate investigation." *Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008) (citing *Campbell v. Giuliani*, No. 99-CV-02603, 2000 WL 194815, at *3 n.6 (E.D.N.Y. Feb. 16, 2000)); *see also McCaffrey v. City of New York*, No. 11-CV-01636, 2013 WL 494025, at *5 (S.D.N.Y. Feb. 7, 2013) ("[A] 'failure to investigate' is not independently cognizable as a stand-alone claim[.]"). As such, Plaintiff's sixth claim—grounded in his allegations that Defendants Eschmann and Juskin failed to "initiate the process to criminally charge" other inmates and "failed to conduct[] an investigation" (Am. Compl. ¶ 108)—does not state a cognizable claim.

Accordingly, Plaintiff's sixth claim for relief is dismissed.

VI. <u>Qualified Immunity</u>

Finally, the State Defendants argue that Plaintiff's claims should be dismissed because they are entitled to qualified immunity. (Def. Br. at 32).

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013); *see also al-Kidd*, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments. . . . [I]t protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks omitted)). However, on a motion to dismiss, Plaintiff's entitlement to qualified immunity must "appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (internal quotation marks omitted).[13]

---

[13] The Court does not address Defendants Jones, Julien, Gibbons, Figueroa, Eschmann, Ms. A, Burnett, Churns, and Juskin's qualified immunity defense, having found that Plaintiff has failed to state a claim against them. *See Close v. Bedford Cent. Sch. Dist.*, No. 23-CV-04595, 2024 WL 3427213, at *14 n.23 (S.D.N.Y. July 16, 2024) ("Because all of Plaintiffs' federal claims fail on the merits, the Court need not address the parties' arguments concerning qualified immunity."); *Robles v. Khahaifa*, No. 09-CV-00718,

With respect to Defendants Valentino and Holloway, at the time of his alleged incident with Plaintiff, a failure to protect claim under the Eighth Amendment was clearly established law. *See Jenkins v. Officer S (Downstate)*, No. 19-CV-10728, 2021 WL 4392611, at *5 (S.D.N.Y. Sept. 24, 2021) (citing *Farmer*, 511 U.S. at 834)). As stated *supra*, Plaintiff has sufficiently alleged a violation of that constitutional right as to Defendants Valentino and Holloway. However, at this stage in litigation, the Court cannot find that they are entitled to qualified immunity. Although the Court is unable to conclude that Defendants Valentino and Holloway are entitled to qualified immunity based on the face of the Amended Complaint, "a factual basis for qualified immunity may arise as the proceedings develop." *Rodriguez v. Burnett*, No. 22-CV-10056, 2024 WL 1466880, at *9 (S.D.N.Y. Apr. 4, 2024) (quoting *Terranova v. New York*, 144 F. App'x 143, 146-47 (2d Cir. 2005)). They may revisit this argument after developing the record in discovery.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion to dismiss is GRANTED as to the first, second, third, and sixth claims for relief. The motion is DENIED as to the fourth claim for relief.

Defendants Valentino and Holloway are directed to file an answer to the Amended Complaint within 14 days of the date of this Order. The Court will separately docket a Notice of Initial Conference.

Plaintiff, within 60-days of this Order, is directed to (i) serve Defendants Dario Torres, Timothy McKenny, Zaire Birks, Eric Johnson, and German Castillo with the Amended Complaint; and (ii) file to the ECF docket proof of service thereof. *See* Fed. R. Civ. P. 4(m); Fed. R. Civ. P.

---

2012 WL 2401574, at *9 (W.D.N.Y. June 25, 2012) ("Given that no constitutional violation was found, this Court need not address defendants' alternative contention that they deserve qualified immunity for their actions." (emphasis deleted)).

5(a)(1)(B). Plaintiff's failure to comply with this Order may result in dismissal of this case as to Defendants Dario Torres, Timothy McKenny, Zaire Birks, Eric Johnson, and German Castillo. Plaintiff is further directed to provide an updated address for Defendant Torres. (*See* Sept. 24, 2024 Entry (noting that mailing to Defendant Torres has been returned for "Insufficient Address")).

The Clerk of Court is respectfully requested to: (1) terminate Jones, Julien, Gibbons, Figueroa, Eschmann, Ms. A, Burnett, Churns, Juskin, and Scott Durant as Defendants; (2) terminate the pending motion (Doc. 71); and (3) mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated:    White Plains, New York
          December 23, 2024

_____
PHILIP M. HALPERN
United States District Judge

19